v. Texas Disposal Svc of TX, Ltd. I'm Shawn Stevens, and I represent Republic Waste of Texas in this appeal. There's just one question before you today, and that is whether the district court erred in dismissing this case because it failed to require TDS to show that the legislature limited, with unmistakable clarity, the City of San Angelo's home rule power to enter into this contract with Republic. The district court ignored the depth and the breadth of the home rule power that is given to cities like San Angelo through a 1912 amendment to the Texas Constitution called the Home Rule Amendment. That amendment changed the way drastically that cities did business. Prior to that time, and during the time of the Republic of Texas, cities had to go to the legislature to receive authority for any acts that they wanted to engage in. After the Home Rule Amendment happened, cities transferred the power from the state, not through the legislature, but from the Constitution through the city charter into the hands of the cities themselves. Since the Texas legislature... Would it be fair to summarize your argument as follows? San Angelo got its power from the Constitution to do what it did, and therefore, it did not get its power from Chapter 363 or 364, and so 363 and 364 saying under this section and whatever, whatever, taking power away doesn't matter because I'm not getting this power from this section, so it doesn't matter whether this section then takes that power away. It nets out, and I'm still left with my home rule. Is that the argument? That's absolutely correct, Your Honor. Because it was kind of hard to get there reading all this stuff. Finally, that's where I got your argument. I wanted to be clear on that. So you're resting on the notion really that you're not receiving power from this chapter, so whatever this H means doesn't really matter because it applies to this section does not apply. That's correct. So if you're not under this section, you don't care whether it applies or not. That's correct, Your Honor, because this power that... Now, we believe that 363 is often a belt and suspenders transfer of power. Also, under the government code, there is a codification of that police power that is transferred because this police power that is given to the cities through the home rule amendment comes with the presumption that any action a city takes is valid, and this particular charter, as all the charters have, has a section, section 19, that deals with the police powers of the cities, and it allows them to protect the public health, life, and property, and for decades, long before 363, long before 364, cities were allowed to enter into these types of exclusive contracts for the handling of their waste and the disposal of their waste. Furthermore, that opinion is carried out by the attorney general's opinions that we cite in our briefs, as well as the cases dating back to 1923 and 1943. Is your argument that if the state was wanting to limit that police power, instead of saying this section does not apply, it would have to say no municipality may allow, you know, forbid a private entity or, you know, something where it would be like overarching rather than this section does not apply? That's correct, Judge Haynes. Under this construction of the Home Rule Amendment, because of this presumption of validity, there is an extraordinary burden that a party who is challenging the city's power has to meet, and whether that burden has been met is a question of law for the court. That test that the Texas courts use to determine whether that burden has been met is called the Unmistakable Clarity Rule. So to override that home rule power, the legislature would have had to have said with unmistakable clarity we are prohibiting cities or limiting the rights of cities to enter into these types of exclusive contracts. And as you point out, the Subsection H doesn't have that kind of unmistakable clarity. In fact, it doesn't say that we limit or prohibit cities from exercising home rule power at all. Instead, it says it doesn't apply. The language specifically says this section, so 364.034, does not apply to a private entity, so Republic or TDS, that contracts to provide temporary solid waste disposal services to a construction project. So it doesn't say we're limiting you cities. It says this section doesn't apply in this circumstance. Now, we know that the Texas legislature knew how to limit cities when it intended to do so because the very same legislature that enacted Subsection H also enacted Subsection F at the same time that it enacted Subsection H. And it has in it this very specific, very unmistakable limitation on cities. It says that governmental entities, including municipalities, may not restrict the right of an entity to contract with a licensed waste hauler for the collection and removal of certain very specific types of waste. That includes grease trap waste, grit trap waste, lint trap waste, or sand trap waste. So the legislature used that unmistakably clear language and told cities that they may not restrict the right of an entity to contract with someone for those types of waste removal. But it did not. The nature of the work, whether the equipment is interchangeable, I mean, is the construction debris or waste, that requires dump trucks and dumpsters. But if you're collecting garbage waste, you need a garbage truck that gobbles it up every few blocks. Your Honor, that's not clear from this record. Do these companies do the same kind of work? Do they have the same kind of equipment, or is it by definition a different job? Your Honor, it's not clear from this record. I don't believe that they're necessarily different types of work, but that's not clear from the record. What we do know is that this contract specifically gives Republic the exclusive right to remove all waste from within the city of San Angelo and specifically says that that includes temporary construction waste. That language is used in the contract when it defines the parameters of the contract. We also know from this record that I believe it's pages 96 through 112, that when TDS brought the waste to the landfill, its drivers reported that they were picking up waste from within the confines of the city of San Angelo. So they admit on this record that they interfered with the exclusive right that Republic gained from the city to pick up waste within the city limits. Construction debris. Construction debris, any waste. Garbage, garbage. It's not clear from this record because the types of waste is not limited. What's the difference between the work that these people were attempting to do? It appears from this record that TDS was picking up construction waste, but the record shows that they were making deliveries to the landfill, delivering waste that was collected within the city. The permit that they received to drive through the city specifically pointed out that the city had a contract, an exclusive contract with Republic, and they were aware of it. They were sent a cease and desist letter. They refused to cease and desist. They admitted on this record that they were collecting waste in violation of that exclusive contract. Why would the city pay two companies to do the same work? The city did not pay two companies to do the same work. Your Honor, this landfill, if TDS was picking up lawfully waste outside of the city of San Angelo, to get to the landfill it had to drive through the city of San Angelo, so a permit was needed. The permit that was issued, as the record shows, specifically recites that the permit is not issued to allow TDS to interfere with the exclusive contract. Who is paying TDS to pick up the waste within San Angelo? I think that's the question. Oh, the construction company. The construction, the site owners are paying. It's not the city paying TDS. Not at all. By them doing it, then Republic loses that business, because otherwise the construction company would have to hire Republic to pick up the waste. Exactly. So it's an interference with the contractual right, the exclusive contractual right, that the city negotiated with Republic. Republic probably gave some cut in terms of fees in order to get that. Of course. It's a negotiated contract, and it's not getting the benefit of its bargain. Now, we also know that when this subsection H was entered into, the Texas legislature is presumed to know the state of the law, for example, that the Home Rule Amendment exists. In fact, the Texas Supreme Court told us in McBride v. Clayton and its progeny that the legislature is presumed to know the state of the law, and therefore the courts are supposed to harmonize the new legislation with the existing law, and that courts are not to assume that the new legislation repeals former law by implication. In fact, the Acker court said statutory repeals by implication are not favored. So we know from subsection H that there's no specific, unmistakably clear limit on the city's power to enter into this contract. But what TDS did was convince the district court to impose such a limitation by implication, and that's simply not proper. Now, recognizing that there is a limitation on its argument because the language in subsection H just does not limit the city's power, TDS next moves to an argument and claims that there was an improper delegation of the city's power through this contract. But this is not a case like the Casal case that's cited in TDS's brief. Instead, this contract makes it absolutely clear that only proprietary matters were delegated to Republic, not governmental powers like delegation. They did not delegate rate-making or policy-making powers. This record at 36 and— If you want your exclusive contract, you've got to pay the lawyer to come argue it at this circuit. No, Your Honor. Basically, they're saying they should have honored the cease and desist letter. Instead— No, what I'm saying is that the delegation was of the cost of litigation, not any kind of discretionary decision of the city. There was absolutely no discretionary— no governmental power of the city was given to Republic. What this record shows is that Republic was always subject to the supervision and control of the city. 36 and 37 makes it clear that the solid waste administrator always maintained supervisory power. Further, 24 and 42 through 45 show that the city council is the one who sets the rates and maintains such exclusive control over rate-setting that it even has a format for the bill that must be used. The city sets the hours of operation. It sets policy matters like promoting recycling and reclamation. All of those—governmental powers, policy-making, rate-setting—remain with the city. However, only the proprietary matters, the day-to-day operation of a landfill and a collection— But that's a lawsuit, right? I suppose this lawsuit— We're not in the city of San Angelo versus San Jose or whatever we are. No, Your Honor. In fact, the contract specifically— Yes, the contract specifically gives— They delegated that to you all, and that seems to be delegating the privilege of paying lawyers. That's correct. I'm sorry, I misunderstood your question. Yes, that's correct. It's specifically in the contract. Doesn't Section 8 exclude contracts to provide temporary solid waste disposal to a construction project? It does. So it means that that section— What TDS's argument is is that Section 364.034 gives cities some power, and then it pulls some of that power back. But that's not what this section says. This section says 364 doesn't apply at all. So we're left with that very broad home rule power that the cities have, not from any legislation, but from the Constitution through their charters. And as a result, there needs to be an unmistakable limitation on that power before we can say that the legislature has limited that very broad power of the city. This language— If you were relying for your contract on 364.034, you'd have a problem. But because you're not relying on that for the power that the city had to enter the contract, then this section doesn't apply, kind of wiping this section out altogether doesn't affect you. That's your argument. Your Honor, if the power only came from somewhere in Section 364 and not anywhere else, then we might have a problem. But that's not the case. There is power here from the home rule amendment. There's power here from the government code. And there's power here from 363. And as a result, there has not been an unmistakable limitation on that power. There's not been an improper delegation. And we ask the court to instruct the court below to enter a declaration that the contract was valid, that the city had the power to enter into it, and to remand the case for the tortious interference claims. All right. Thank you, Ms. Stevens. Mr. Hemphill. Thank you. May it please the court, Jim Hemphill for Texas Disposal Systems, Inc., which we call TDS. This is, of course, a case of statutory interpretation. And the goal in interpreting a statute is to divine what the legislature's intent was. And, of course, that starts with examination of the text of the statute. Well, let me ask you this, though, as a first-up question. If 363 and 364 just didn't exist at all, would the city of San Angelo have the power to enter into the contract at issue, putting aside the delegation argument, but just would it have that kind of police power to enter into an exclusive contract? I think Texas case law prior to 2007, when this statute was adopted, indicates that the answer is yes. Okay. So what is wrong with the argument that this section is giving power and then limiting that power, however that's not the source of the power that the city is asserting, so who cares? What's wrong with that argument? Sure. I think because the statute's text indicates that the legislature did intend to limit all governmental entities, including home rule municipalities. Why say this section does not apply rather than something else, no city shall or no municipality shall, like in F or elsewhere? This isn't – Because when something says this section does not apply, it doesn't mean to pull in every other thing under the sun. It means to talk about this section. Right. And why isn't that pretty clear? I think it's clear because of the other provisions of 364034, because subsection H, which is the subsection at issue here, is not the only place in 364034 where the legislature used the language this section does not apply. That language is also used in subsection E, and I think the way it's used in subsection E is determinative of what the legislature's intent was when it used that language, and here's why. We need to walk through subsection E. Subsection E starts by saying except as provided by some other subsections. Then it says this section does not apply, same phrase as is used in subsection H, to a person who provides the public or private entity, public agency, or county with written documentation that the person is receiving solid waste disposal services from another entity. Okay, stop there. What does that mean? It creates an opt-out. It says that if a person provides the governmental entity with written documentation that it already has a waste disposal contract with another entity, then the allowance, the section's approval of exclusive waste contracts does not apply. So it creates an opt-out. Okay. So if you stop there, under Republic's argument, home rule cities, that wouldn't apply to home rule cities because of the language of this section does not apply. Republic would say home rule cities still have inherent authority under the police power. However, the legislature didn't stop there. The legislature went on to not the following sentence but the sentence after by saying the governing body of a municipality may provide that a franchise it grants or a contract it enters into for solid waste collection and transportation services under this subchapter or under other law supersedes inside of the municipality's boundaries any other franchise granted or contract entered into under this subchapter. So the legislature then created an exception to the opt-out exception. Why did they do that if there already was inherent authority for home rule cities to enter exclusive contracts? It's governing more than home rule cities. It's governing counties. It's governing cities that aren't home rules. It's governing a lot of different entities. When you get your power from the Constitution, before the legislature can mess with that, they need to be pretty clear. I mean, that's kind of important. How clear they need to be is another point, but let me stick with the statute for a minute because what the legislature said when they created an exception to the opt-out in E was they specified municipality. Yeah, but municipality is a term that encompasses cities, and there's a bunch of cities in Texas that aren't. I mean, Texas is a big place, and there's a bunch of cities that aren't home rule cities. So I don't see this as being some kind of a nullity if we exclude out the city of San Angelo or we say the city of San Angelo is deriving its power elsewhere. That doesn't make this statute a nullity. I don't think it makes it a nullity, but what I think the legislature is saying in subsection E is that when they use the term this section does not apply, then they come back and say, but there's an exception to that exception for municipalities. They're making it clear that when they say this section does not apply, they meant an exception. Without H? No, no. H is pretty clear. It says this section does not apply. Correct, correct. And I think what E shows is when the legislature said this section does not apply, they meant to divest power from home rule cities. And that goes to the unmistakable clarity point, and I think that they work together because Republic talks about unmistakable clarity being an extremely high standard, and they use that phrase over and over again, but they really don't put flesh on the bones of what Texas courts mean when they say unmistakable clarity. And I think that it's revealing to look at the cases that find the legislature hasn't limited home rule cities' authority. Has not? Has not. In other words, cases... That's where it packs. Cases... I didn't think at all similar to this, but I didn't really see that. In other words, you're, I mean, there are actually, the Texas Constitution actually has a lot of things where they grant broad authority and then they say unless otherwise provided. That's true with Texas district courts. They have all of the jurisdiction of any court anywhere in the world except as otherwise provided somewhere else. And so then you're looking for some limitation on that power. And so that's true of a lot of things. And so I'm concerned not just with resolving this case but being careful that we don't suddenly create a lot of restrictions that aren't intended in Texas law. Right. I haven't been able to find any cases where the language, the specific language this section does not apply is litigated at all. There's no cases construing this section. There's no cases construing this section. If the mess was created by the legislature, why don't we send it to Texas Supreme Court as a certified question, let them figure it out. Well, that's certainly an option for this court. We think that the district court was correct that this was intended by the legislature to be a limitation on power of all public agencies is the term they use, which specifically in 364 includes all municipalities. So we don't think that a certification is necessary, but certainly that's something that this court is free to do. This is a question of first impression under Texas law. This statute has not been interpreted. Are these contracts pretty valuable? The contract itself as a whole is quite valuable. We're talking here about a small slice of that contract, just what's called construction waste, or in the trade it's called construction and demolition waste. And Your Honor asked a question about isn't this a different kind of waste? It is. For two reasons. First of all, construction sites are inherently temporary. Not in New Orleans. Well, that could be true, but the statute provides for this what we say is a limitation on power in Subsection H for temporary construction projects is what it says. And it's a different type of waste. It actually can go to a different type of landfill. Construction and demolition waste is not the kind of municipal solid waste you see that has lots of problems with decomposition and that sort of thing. So there are actually separate landfills. It doesn't have to go to a separate landfill, but it can go to a separate construction and demolition waste landfill. So there's rational reason for the legislature to make this distinction. Now, the cases that talk about this unmistakable clarity situation, they really fall into two classes when a court finds that the legislature has not limited a home rule system. Come back one second just to the question Judge Clement asked you. I'm intrigued, not that it drives the answer here. She asked you whether or not these were lucrative, da-da-da-da-da. What's at stake here? I know you said it's a very small slice of pie. So dollar-wise, what's at stake here? How much? Ballpark? I mean, it's not in the record, so I can't say for sure. But, I mean, the contract itself is a multi-multi-multi-million-dollar contract. The construction waste aspect of that is a small, small percentage. It's big enough that lawyers are being paid to come to New Orleans to argue about it. Well, that is true. That is true. But it's, you know, when you think about. . . I'm not going to deny you getting back on your plane to go back home. But based on your answer, just trying to get a ballpark out of here. Sure. It's not definitive in terms of what we decide. I just want to have some, in my head, some sense of I realize waste pickup, et cetera, that's a huge industry. Here, assuming the terms construction waste has some viability, and further assuming that Texas is a huge place, then just getting sold. We're talking about millions generally? I don't know if it's up to millions annually. Okay. All right. I'm not privy to how much construction waste we public haul.  All right. Well, I was trying to get a feel, not as much for that, but also for, A, given that, as you say, there aren't many cases construing this statute, and B, if this, we're moving off toward certifying some question. I was trying to get, you know, is this just a small, nuanced, not having been reached issue because it doesn't come up deal, versus, yeah, it impacts other cases. I mean, we get insurance cases that maybe it's on a small sliver, but we say, well, there are tons of other cases that are going to come down the road or it's important for perpetuity and so on and so forth, as opposed to something that's, you know, pretty nuanced here. And that really was the reason why I was asking. But I get you. You don't know, so. And I think I can address your question, Your Honor, in a little bit different way because it's my understanding that San Angelo certainly is not the only city in Texas that has exclusive contracts that purport to include construction waste. My understanding is that cities vary as to how or if they try to enforce that because of subsection H. So I think that I can't put a dollar figure on it, but I can say that I think that this is an issue that is not unique to San Angelo, Texas. All right. That's fair. If that helps. Yeah, that's fair. Go ahead. Well, appreciating that the phrase this section does not apply in 360-4034H has not been construed by anybody, has a comparable kind of section been construed? That's what I was trying to get at before that I didn't ask very well. Sure. And I think the answer is no. I think that's kind of weird. I think the answer is no. What we have is we have law suits about all kinds of stuff in Texas and we haven't gotten to this one. But what I don't think any Texas appellate court has ever done is found that a statute that is concededly a limitation on governmental power, the public concedes this, that it's a limitation on every kind of power except home rule cities. There's no doubt that subsection H is a limitation on power. But it's also a grant of power, and that's why it's a limitation. That, to me, is the key. Right. If I'm giving you something, I'm giving you a gift, but you can't use it on Sundays, that's different from you already have something over here. I'm not telling you what you can do with that. But there aren't any cases that find that a limitation as to some governmental entities is nonetheless not clear enough to be a limitation on the home rule city. I mean, otherwise you're saying there's really no difference. The whole idea of the home rule is kind of like Texas district courts have all the power in the world except, and then there's some exclusively federal, there's JP, forcible entry, there's this and that, but they have all the judicial power not expressly vested elsewhere. So to me that's different from then creating a court. Now we'll create like a county court and only as a jurisdiction we give it, kind of like federal district courts have only the jurisdiction granted to them. So I don't understand your point of, well, this is dealing with municipalities. Yeah, we have a lot of municipalities that this will cover, right? We have a lot of cities that aren't home ruled. Yes, yes. But, again, I believe that the legislature intended to limit municipalities. I don't care about their intent. I care about what they said. Sure. It's some kind of intent thing if it's ambiguous, and I really don't see what's so ambiguous about this section does not apply. To me, I don't find this to be an incredible statutory construction thing, this section, and they're not claiming power under this section, so why do we care about what it does not apply to? Because I think that when you look at the text of the entire statute, including what I walked through in subsection E, I think the legislature's text shows that it intended this section does not apply to be a limitation on all municipalities' power. When you look at the cases, the republic relies heavily on this case called City of College Station versus Turtle Rock Corporation, and it's a good example of when the legislature has not spoken to limit home rule municipalities' authority. There, the City of College Station said to developers, if you're going to develop so much of a property, you need to set aside some parkland. And the developer said, wait a minute, there's a statute that lists a city's powers when it comes to development, and that's not listed, so the city doesn't have the power. And the Supreme Court said, no, it's a home rule city. That listing is illustrative. It's not exclusive. So that's the type of case that we talk about when we talk about unmistakable clarity is silence can't be unmistakable clarity. Our position is that there is no silence here. Another case that republic cites is called Forwood versus City of Taylor, and there the argument was this home rule city can't put nine people on the zoning adjustment board or some board because the statute says you can only have three, and the court said, no, you're misreading the statute. The statute by its terms only applies to general law municipalities which derive their power from the legislature, not the Constitution. But the point is that when the legislature wants to make a distinction between general law municipalities and home rule municipalities, it says so. So what we think that actually republic is trying to read into this statute, a prohibition that applies to general law municipalities but that does not apply to home rule municipalities when the statute is silent as to that alleged distinction. So we think that the text of 364.034, when all taken together, displays legislative intent that when they say this section does not apply, that is a limitation on power even on home rule cities because they came back and gave it back to municipalities including home rule cities. So that's that. How did this recent, whether a statute recently passed on can't ban fracking, how did that get awarded? I don't know. I don't know, Your Honor. I'm sorry. On the delegation of authority issue, I mean, really what's happening here is republic is trying to enforce a city ordinance, which we think should be the city's job and not republic's job. It's absolutely true that the contract purports to give republic the responsibility to enforce this ordinance. But that's what's going on here, we think. Now, this was an unusual posture of this case because we filed a 12B6 motion to dismiss, which was granted, on the sole issue of whether or not subsection H was a limitation on the city of San Angelo's power. Republic came back and filed a motion for summary judgment, even though we haven't filed an answer yet. So our position is that the court was correct in granting the 12B6. Should this court disagree, we think it's a remand and not any kind of entry of judgment because, again, we haven't even filed an answer yet. So it would be a remand with instructions. We still believe that the statute, in context, is clear that this was intended to be a legislative limitation of power that was intended to reach home rule cities as well. That's what the district court found, and that continues to be our position. Any other questions? I'll give you a minute of my time. Thank you. Back to you, Ms. Stevens. Do you have an idea of kind of what the worth is, how much, how many dollars? Your Honor, I don't, and because this was on a 12B6 motion, the record is just not developed on that. Well, I mean, I'd rather surmise there might not be anything on record. Again, the question wasn't so much for deciding whether it's important enough to deal, but I was just wondering, you know, kind of a ballpark about the size of the dollar value since it is within the other. But if it's not known, that's fine. I simply don't know the answer to your question, Your Honor. But let me talk to you about three points on rebuttal. Are you going to address certification? I certainly can address certification. I think that may be what the ballpark question could have relevance to. Certainly, certainly. But in addition, it could have relevance to the certification question because are we just dealing with kind of a one-off, or is there a lot of this? I'm not aware of any other litigation, and no one can cite any other cases dealing with this section, so I don't think it comes up all the time. However, we don't believe this Court needs to certify it because this case law is clear. This Home Rule amendment goes back to 1912. There is plenty of case law interpreting the fact that if you're going to limit a Home Rule city's power, you have to do it with unmistakable clarity. That just hasn't happened here. And as a result, there's no need to send it for certification to the Texas Supreme Court because there's not a question of unsettled law here. This is very black-letter law that Home Rule cities have power unless it is pulled away from them with unmistakable clarity. So there's no doubt about what it means. If it's ambiguous, then that wouldn't be unmistakable clarity. Absolutely, that's correct. And let me address the standing question while we're talking about sort of preliminary issues like that. There is no standing problem here. Not only did the contract – this is an exclusive contract, which gave Republic the right to collect all the waste, and to Judge Clement's question, that included temporary construction waste. So the type of waste here is irrelevant. All of that was given to Republic in this contract at page 27, I believe, of the record. It gave the exclusive right to pick up construction waste, temporary construction waste, and all waste in the city. So anything that TDS did, picking up waste within the city limits of San Angelo, interfered with that contract right. It's a property right that we had the ability to defend in court. It would be no different than if TDS's truck ran into one of our trucks. It's a tort, and we have standing to bring that claim. Let me ask you this. Putting aside this statute, which I understand the Senate has no law, surely there have been other claims made contractually or otherwise, and someone similarly situated to your client has said, nope, Home Rule Charter, Home Rule Amendment, you know, governs that. And there's either some Texas Intermediate Appellate Court or the Texas Supreme Court or whatever has said, right, Home Rule Charter, whatever, you know, is the answer. So not so much on this point, but surely there are cases where that's the case. So you're saying that that line of cases, A, exists, and that's why it's so clear because it's very clear here to me on this, but to where unmistakably, you know, this went to the Texas Supreme Court for certifying. They'll send us this whole string site of we have said before, yada, yada, yada. So that's there. Where are they? I mean, I may have missed them in the briefs. Chief Judge Stewart, I see I'm out of time. May I answer your question? I know, but the clock never runs on the questions of a judge. There is a long line of cases addressing Home Rule City's power, and they all go back to telling us that unmistakable clarity is what is needed if you're going to limit Home Rule City's power. Well, see, the principle you're enunciating is not difficult. I get it. I mean, even in Louisiana we have Home Rules and the Lawrenson Act and a lot of things that govern villages and cities and so forth. So that's not a new notion, but it still to me doesn't answer the question of, you know, we can give and we can take away. And so it just strikes me intuitively this can't be the first case where there's been this collision between a contractual exercise of something else and a defendant such as your client says, no, got you, the Home Rule Charter, the Home Rule Amendment, you can't do it, I don't care, whatever other language. And some Texas Intermediate Court of Appeal or the Texas Supreme Court said, we need not get into the statutory interpretation, but it's Home Rule. If it's that abundantly clear, that's what I'm asking. Not the principle you're enunciating. I'm saying where are the line of cases that if I think you're right, then I'm just going to look at these by analogy and say this is no different from A, B, C, D, and E where someone tried to do X, Home Rule was asserted, clear line of authority in Texas where they said zap, that's the answer. That's what I'm asking. Your Honor, I've got several cases for you. All right. And I'll put them into two categories. One is where unmistakable clarity was met and it limited a Home Rule city's power, and the other set of cases are where unmistakable clarity test was not met and so the Home Rule power applied. Let's look at a case that came out of the San Antonio Court of Appeals. Well, I don't want to believe it. Are they in the brief? They're all in the brief, City of College Station v. Turtle Rock, and unlike what TDS said about that case, this was a situation where the city had put in place an ordinance that said, developers, if you are going to develop, we want you to set aside in your plat some parkland and that's a requirement for getting your plat developed. Now, the developer said, no, we think that there are statutes out there that list how cities can acquire parkland, and this isn't one of those. And the court looked at the statute and said, well, it doesn't say it's the exclusive listing, so there's no limit on how cities can acquire parkland. So we are going to allow the city, through its police power, to impose this ordinance and acquire parkland by the exercise of its Home Rule power. So it's very much like the case we've got here. Now, a different case that's not in the brief because it just came out this month is the Laredo Merchants Association v. City of Laredo case. And that Westlaw side is 2016 Westlaw 437-6627, and it's out of San Antonio, so there's no petition history yet. Again, 2016 Westlaw 437-6627. Now, Laredo, trying to clean up the city, made a new ordinance that made it unlawful for merchants to hand out checkout bags in the city, and they said that plastic one-time-use bags or single-use paper bags could not be handed out. And they imposed a $2,000 per violation fine. So the merchants said, we've got to be able to give our customers bags to put things in, and we believe that this conflicts with the Health and Safety Code, a provision of the Health and Safety Code. And they brought before the court that provision that specifically stated that it prohibited, so it used that unmistakably clear language. It prohibited local governments, municipalities, from adopting ordinances for solid waste management purposes that prohibit or restrict sale of use of containers or packages. So the checkout bags, the paper bags, fit within the definition of containers or packages. And because the statute prohibited local governments from adopting ordinances that restricted the sale or use of those, there was an unmistakably clear limit on the city's power. So that's an example of where there's been a limit. Home rule power is specifically overridden and pulled away from the city on one very specific matter. But we just don't have that here. All right. Well, that's helpful. We'll look it up. Last question. You agree with Council Opposite? If we were to agree with your position that you came in on, they came in on 12B-6, you filed a summary judgment motion that you'd be back, but then filed an answer and all that? Certainly on the tortious interference claim. We think that on the contract claim, the city had the power, and this court should enter a declaration that the contract is valid. But on tortious interference, of course, that we'd go back for remand. All right. Thank you, counsel, both sides. Interesting case. We will take a brief recess, about ten minutes, and then we'll come back and hear the third case.